FIRST STATE BANK OF BEN FRANKLIN v. HAMER. (No. 2094.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 27, 1919.)

BILLS AND NOTES ☞527(2)—PAYMENT—EVIDENCE.

In an action against a bank in the nature of conversion of two vendor's lien notes, deposited by plaintiff as collateral for his note, but claimed by defendant also to secure another note on which plaintiff was indorser, evidence *held* to sustain a finding that the indorsed note had been paid out of the assets of the maker under an agreed transfer and assignment thereof to the bank.

Appeal from District Court, Delta County; A. P. Dohoney, Judge.

Action by A. F. Hamer against the First State Bank of Ben Franklin. Judgment for plaintiff, and defendant appeals. Affirmed.

Newman Phillips, of Cooper, for appellant. James Patteson, of Cooper, for appellee.

LEVY, J. The appellee's suit against the First State Bank of Ben Franklin, appellant, is in the nature of conversion of two vendor's lien notes for $300 and $500, respectively, alleged to have been placed with the bank by F. M. Nidever as collateral security for his note of $149, due October 1, 1916. F. M. Nidever, as alleged, on the 4th day of October, 1916, tendered the bank the money due on the note of $149, which the bank refused to accept, and refused to deliver his two vendor's lien notes. On November 1, 1916, F. M. Nidever, as alleged, transferred to the appellee, Hamer, his interest in the two notes. The said bank answered by general denial and in defense that the two vendor's lien notes were held by the bank as collateral security for the note of F. M. Nidever in the principal sum of $149, and also for a note of the Ben Franklin Drug Company in the balance of $500.78, which note was indorsed by F. M. Nidever; that on October 7, 1916, the two land notes were paid in full, and the proceeds so received were applied by the bank to the payment in full of the two notes above, leaving a balance of $199.29 tendered by the bank to the owner thereof. The case was tried on special issues, and the jury made the following findings of fact: (1) That F. M. Nidever placed the two vendor's lien notes with the said bank as collateral security only for his individual note in the principal sum of $149; and (2) that the indebtedness to the bank of the Ben Franklin Drug Company was paid and discharged out of the assets of the drug company under an agreed transfer and assignment thereof to the bank.

In accordance with the verdict of the jury the court entered judgment against the bank for the difference between the $149 note held by the bank and the $849 collected by the bank in payment of the two land notes held as collateral security for the $149 note.

The first assignment of error assails the ruling of the court refusing to set aside the answer of the jury to the second special issue submitted to them. The contention is that the transfer of the assets of the drug company and the creditors that were to be paid out of the proceeds was reduced to writing, and that the written list of creditors did not include the note of the drug company to the bank. The following is the written transfer:

"Cooper, Texas.

"This will certify that I, the Ben Franklin Drug Company, of Ben Franklin, Delta county, Tex., for and in consideration that the First State Bank of Ben Franklin, Tex., has for me

fully paid, settled off, and discharged my creditors as shown by the list thereof furnished to said bank all of my property, books, notes, and accounts of the said drug company for such trust act. This January 14, 1915.

"[Signed]    Ben Franklin Drug Company."

And the bank offered in evidence a typewritten list of creditors of the drug company, which was identified by the cashier of the bank as the list furnished by the manager of the drug company to be used in making the settlement of debts out of the assets. This list does not have on it the name of the First State Bank of Ben Franklin or the debt of the drug company to the bank. But the manager of the drug company challenges the identity of the list offered by the cashier as the list of creditors referred to in the transfer as "furnished to said bank." He testified:

"I turned the whole business over to Mr. Miller to make a distribution among the creditors and to release me. He agreed to furnish the money to settle with the creditors. I turned over to him, with a list of the creditors, and he was to settle with the creditors and to release me. I did furnish him the list; he and I made it out together. I do not remember whether it was made out on the typewriter or not. It is not a fact that the list as made out did not contain the debt of the Ben Franklin Drug Company to the bank. It was all included together. I know Will and I were in the bank together, and we set down all the indebtedness of the drug company. I do not remember making a typewritten list of the debts of the Ben Franklin Drug Company that did not include the debt owing to the bank. I do not remember that part at all."

It is clear from the evidence and the written transfer that a list of the creditors of the drug company to be paid out of the assets was furnished to the bank in their undertaking to pay the creditors out of the assets of the bank. And the effect of the evidence of the cashier is that the list offered in evidence by him is the real and original list of the creditors furnished the bank, and that the list so furnished did not have on it the name of the bank and the debt of the drug company to it; while, on the contrary, the effect of the evidence of the manager of the drug company is that the real and original list of creditors furnished the bank did have on it the name of the bank and the debt of the drug company to it. Thus the evidence is conflicting respecting the identity of the list offered by the bank. And in view of the conflict of the evidence the court did not err in passing the decision of the question to the jury. If the name of the First State Bank of Ben Franklin was, as found by the jury, on the list of creditors furnished the bank, then it follows, as concluded by the trial court, that the debt of the drug company to the bank was paid off and discharged out of the assets of the drug company. This being so, then the bank was legally liable, as found by the court, for the proceeds of the two land notes above the payment of the $149. The first assignment and the other assignments of error are overruled.

Affirmed.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 26, 1919.